Nelson B. MOORE, Dwight P. Joyce, the Glidden Company, Plaintiffs,

v.

GREATAMERICA CORPORATION, Defendant.

No. C 67-346.

United States District Court
N. D. Ohio, E. D.

May 18, 1967.

**491**

Victor DeMarco, Cleveland, Ohio, for plaintiffs.

Harry C. Nester, James D. Knotter, Jr., Hahn, Loeser, Freedheim, Dean & Wellman, Cleveland, Ohio, Abe Krash, Jerome I. Chapman, Arnold & Porter, Washington, D. C., for defendant.

CONNELL, Chief Judge.

This is an action for injunctive relief arising out of a claimed violation of the Securities Exchange Act of 1934, as amended, 15 U.S.C. Sections 78a–78jj (the "Act"). The controversy involves Section 10 of the Act and Reg. S.240.10b–5 (Rule 10b–5) as promulgated by the Securities and Exchange Commission.

Pending a hearing on the merits the plaintiffs have applied for and the parties are presently before the Court on a motion for a temporary restraining order, to enjoin the defendant from taking any action in connection with a certain offer made by it to shareholders of The Glidden Company, including accepting any tenders in response thereto.

Plaintiffs herein contend that tender offers made by defendant to the stockholders of The Glidden Company, as published in certain newspapers of general circulation, to-wit, the New York Times, Wall Street Journal and Cleveland Plain Dealer, contain certain statements which are either untrue or misleading. The language complained of in said offers, as published in the aforesaid newspapers on two separate dates, is as follows:

"By the above offer, Greatamerica Corporation seeks to acquire controlling stock ownership of The Glidden Company. If such ownership is obtained, Greatamerica does not plan any changes in the management or business operations of The Glidden Company."

Plaintiffs contend this language was used for the purpose of influencing the shareholders of Glidden to act in a manner desired by the defendant.

Section 10 of the Act provides in part:

"It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange * * *

(b) [t]o use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules or regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. June 6, 1934, c. 404, Section 10, 48 Stat. 891."

Rule 10b–5 provides in part:

"Reg. Section 240.10b–5. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, * * *

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances

under which they were made, not misleading, or * * *."

■ The question before us is whether the language complained of is in violation of Section 10 of the Act and Rule 10b–5. This Court is required to determine herein whether there is a reasonable probability that plaintiffs may be entitled to the relief prayed for upon a hearing on the merits and whether, unless the *status quo* is preserved, irreparable injury will result to the plaintiffs.

No question is raised as to the jurisdiction of the Court under this Act. Defendant claims that The Glidden Company has no interest in the subject matter of the action because the statute in question is intended to provide a remedy for buyers and sellers of stock in the event of false statements. Defendant claims that The Glidden Company is neither a buyer nor seller. Defendant claims that only a party who has tendered shares pursuant to an offer has standing to sue. Defendant here argues that since the plaintiffs Joyce and Moore had not made such a tender, nor is one alleged in the Complaint, that they have no right to sue. During this hearing counsel for plaintiffs moved to amend the Complaint by interlineation to the effect that such a tender had been made by the plaintiff Moore, which motion was granted by this Court.

■ The purpose of Section 10 and Rule 10b–5 is clear and is based upon sound public policy. It shows the Government's deep concern for those who buy and sell securities in the marketplace. The statute and rule are designed to protect the unwary and the inexperienced buyers and sellers.

■ This Court will follow the general trend of recent decisions in the securities area which have favored a broad and liberal interpretation of the Act in order to eliminate any undesirable practices. Our Sixth Circuit has indicated that it favors such general trend in the case of Texas Continental Life Insurance Co. v. Dunne, 307 F.2d 242 (6th Cir. 1962), wherein it rejected the view that only the Securities and Exchange Commission could enforce the provisions of Section 10 of the Securities Exchange Act and specifically held that a private right of action lies thereunder.

The Second Circuit, in the case of Studebaker Corp. v. Gittlin, 360 F.2d 692, 698 (2nd Cir. 1966), also adopted this broad and liberal view. There the Court relied on J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), in concluding that injunctive relief could be afforded in a private action under Section 14(a) of the Act and Rules 14a–3 and 14a–6 dealing with proxy solicitation. See, also "Private Enforcement Under Rule 10b–5: An Injunction for a Corporate Issuer," 115 Univ.Pa.L.Rev. 618.

■■ This Court is persuaded by the rationale of the *Borak* and *Gittlin* cases, and therefore rules that The Glidden Company does have standing to sue. This Court rules that the individual plaintiffs have standing to sue.

■ We move to consider whether the complained of language meets the requirement of Rule 10b–5 or whether it is in violation thereof. The defendant claims that its tender-offer was proper and not misleading. It claims it was approved by the New York Stock Exchange. Plaintiffs claim that defendant has a perfect right to make a tender-offer and that in doing so it was not necessary for it to indicate anything more than that it would purchase a given number of Glidden shares at a stipulated price, but plaintiffs claim that when the defendant made certain statements in the tender-offer it assumed a particular obligation, and that it therefore had the duty to make a full and complete disclosure of all material facts so as to enable the shareholder, to whom the offer was directed, to make an intelligent evaluation of the offer.

The only evidence presented in the consideration of this motion for a temporary restraining order is that submitted by the plaintiffs. The defendant has not submitted any evidence nor has it

controverted in any way the affidavits submitted in support of the motion.

Some of the significant facts before the Court are that on several different days the defendant published or caused to be published certain advertisements constituting an offer to purchase up to a maximum of 3,560,000 shares of the Glidden common stock at a price of $30 per share, which offer is to expire on 5-22-67 unless extended. As published in the New York Times, Wall Street Journal and Cleveland Plain Dealer, the offer included the following language:

"By the above offer, Greatamerica Corporation seeks to acquire controlling stock ownership of The Glidden Company. If such ownership is obtained, Greatamerica does not plan any changes in the management or business operations of The Glidden Company."

The plaintiffs contend that such language is misleading in the following respect:

In that after having made these statements to influence the shareholders into believing that no changes would be made in the management and thereby providing continuity, the defendant then accused the Glidden management of deliberately attempting to perpetuate itself in office by attempting to effect a merger with some other company. Plaintiffs claim that this basic inconsistency reveals this statement, to the effect that no change was contemplated, is misleading, since the defendant first assures the stockholders that it will retain management, after which they imply to management that they will seek different management, and then reassert to the shareholders that management will be retained.

Such divergent announcements do not conduce to stability; they are disconcerting to the shareholders. The require-

ment of full disclosure in such tender-offers brought this statement from the Chairman of the Securities and Exchange Commission:

"Information about a potential change in control can be particularly essential to an informed decision. A change in control brings with it the possibility of different operating results and different investment results, or perhaps the possibility of realizing on a company's liquidation value. This may be either good, or bad, depending on the facts and circumstances involved. But no investor can reach a conclusion on the possible effects of a change in control until the facts are available to him." See Cohen, "A note on Takeover Bids and Corporate Purchases of Stock," 22 Business Lawyer 149, 151 (1966).

From the foregoing it would appear that if properly proven, at a trial on the merits, such statements here complained of may well be in violation of Section 10 of the Act and Rule 10b–5 either as untrue or as an omission to state a material fact in order to make the statement made not misleading.

■ Since the offer will expire on May 22nd, 1967 unless extended; the shareholders of The Glidden Company and the plaintiffs will be irreparably harmed unless defendant is restrained and they appear to have no other adequate remedy at law unless the order prayed for is allowed.

Accordingly, plaintiffs' Motion for a Temporary Restraining Order is allowed, and the defendant is enjoined from taking any further action in connection with the offer, including accepting any tenders in response thereto received after issuance of this order.

Bond is set at $25,000.00.

Plaintiffs' Motion for Leave to Take Depositions and for Production of Documents is hereby also allowed.